**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2024 MSPB 8**

Docket No. DC-0752-17-0595-I-1

**Macaulay Williams,**

**Appellant,**

**v.**

**Department of Commerce,**

**Agency.**

April 23, 2024

Macaulay Williams, South River, New Jersey, pro se.

Josh Hildreth, Esquire, and Chieko Clarke, Esquire, Alexandria, Virginia, for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## OPINION AND ORDER

¶1    The appellant has filed a petition for review of the initial decision, which sustained his removal for excessive absences.  For the reasons set forth below, we DENY the petition for review and AFFIRM the initial decision as MODIFIED by this Opinion and Order, clarifying the Board's case law on the requirements for proving a charge of excessive absences.

## BACKGROUND

¶2    The appellant was a Patent Examiner with the U.S. Patent and Trademark Office.  Initial Appeal File (IAF), Tab 1 at 1.  On July 7, 2016, the agency proposed his removal for improper conduct, including, among other things,

excessive absences. IAF, Tab 8 at 68-75. The proposal notice indicated that the appellant had been absent with no foreseeable end for over 1 year, or 2,840 hours, due to his health condition and had been granted a significant amount of leave without pay (LWOP). *Id.* As described in the initial decision and undisputed by the parties, the appellant orally responded to the proposed removal, indicating that he was ready to return to work, and later provided a medical note in support. IAF, Tab 59, Initial Decision (ID) at 4. He later returned to work on a part-time intermittent schedule from September 6 to November 3, 2016. *Id.* Thereafter, the appellant began requesting leave again due to his medical condition. ID at 4-5. On March 1, 2017, the agency rescinded the July 7, 2016 notice of proposed removal and issued a new proposal to remove the appellant for excessive absences. IAF, Tab 7 at 37-44. The March 1, 2017 proposal charged the appellant with being absent from work for 2,741.25 hours since July 7, 2015, excluding leave taken pursuant to the Family and Medical Leave Act (FMLA). *Id.* at 37-40. On May 9, 2017, the appellant presented an oral and written reply. *Id.* at 21, 25-36. The deciding official sustained the charge and removed the appellant effective June 7, 2017. *Id.* at 21-22.

¶3 The appellant filed a Board appeal challenging his removal and raising affirmative defenses of whistleblower reprisal, retaliation for equal employment opportunity (EEO) activity, failure to accommodate, and discrimination based on age, race, and national origin.[1] IAF, Tabs 1, 45. After the appellant withdrew his request for a hearing, IAF, Tab 45 at 16, Tab 51 at 1, the administrative judge issued an initial decision sustaining the removal on the written record, *see* ID.

¶4 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response. PFR File, Tab 3.

---

[1] The appellant also argued that the agency constructively suspended him. The administrative judge found that the appellant did not prove his constructive suspension claim, and the appellant has not contested this finding on review. *See* 5 C.F.R. § 1201.115 ("The Board normally will consider only issues raised in a timely filed petition or cross petition for review.").

ANALYSIS

¶5    As a general rule, an agency may not take an adverse action based on an employee's use of approved leave. *Coombs v. Social Security Administration*, 91 M.S.P.R. 148, ¶ 12 (2002). However, an exception exists when the following criteria are met: (1) the employee was absent for compelling reasons beyond his control so that agency approval or disapproval of leave was immaterial because he could not be on the job; (2) the absences continued beyond a reasonable time, and the agency warned the employee that an adverse action could be taken unless he became available for duty on a regular, full-time or part-time basis; and (3) the agency showed that the position needed to be filled by an employee available for duty on a regular, full-time or part-time basis. *Cook v. Department of the Army*, 18 M.S.P.R. 610, 611-12 (1984). This exception is applicable only under unusual circumstances, such as when the employee is unable to return to duty because of the continuing effects of illness or injury. *Id.*

¶6    In this case, the administrative judge found that all three of these criteria were met and that the agency proved excessive, approved absences of more than 2,300 hours between July 14, 2015, and February 3, 2017. ID at 12, 14, 20, 25. We agree with the administrative judge that the appellant was on approved leave during the time periods she indicated and that his absences were for compelling reasons beyond his control. However, we find that the appellant was not adequately notified, until well after this period began, that he could be disciplined for excessive, approved absences. We hold that, to prove a charge of excessive approved absences, an agency cannot rely on absences that predate the warning. The Board's case law has previously suggested as much, *see Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 31 (2015), *overruled in part on other grounds by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 23-25, but in this case we make such a holding explicit.

¶7    In support of this finding, we observe that the primary dictionary definition of "warn" is "to give notice to beforehand especially of danger or evil." *Warn*,

Merriam-Webster.com, https://www.merriam-webster.com/dictionary/warn (last visited Apr. 23, 2024). It would be a stretch to consider a notification of potential discipline as a "warning" to the extent that the notice was given after the underlying conduct already occurred. Furthermore, under that interpretation, the notice of proposed adverse action itself could satisfy the warning requirement, thereby rendering this criterion superfluous.

¶8       This is not to say that an agency is required to ignore any absences that predated the warning. Prewarning absences may still be relevant for other purposes, such as evaluating medical evidence or determining whether the absences have a foreseeable end. However, they cannot be used to support the charge itself. Rather, a charge of excessive absences will only be sustained when the post-warning absences were themselves excessive.

¶9       In this case, the agency first warned the appellant of the possibility of attendance-related discipline on July 8, 2015. IAF, Tab 9 at 26-27. However, this letter warned the appellant that he was in an absence without leave (AWOL) status and that he could be disciplined for AWOL. It said nothing about discipline for approved absences and therefore did not satisfy the notice requirement of the *Cook* exception. *Id.*; *see Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 32 (2014).

¶10      The next time that the agency attempted to warn the appellant about attendance-related discipline was on February 10, 2016. IAF, Tab 8 at 78-80. The February 10, 2016 letter was of the type contemplated in *Cook*. *Id.* It would have constituted adequate notice had the appellant received it, but the appellant denied receiving it. IAF, Tab 56 at 7. Nevertheless, in her initial decision, the administrative judge found it more likely than not that the appellant received the agency's letter. ID at 21-24. Her conclusion was based on several factors, including that the appellant's statement to the contrary was unsworn. *Id.* On petition for review, the appellant points out that his denial of receipt was supported by a sworn declaration. PFR File, Tab 1 at 11-12; IAF, Tab 56 at 23.

Because the administrative judge overlooked this evidence, we must reexamine the issue on review.

¶11 The Board has held that sworn statements that are not rebutted are competent evidence of the matters asserted therein. *Aldridge v. Department of Agriculture*, 110 M.S.P.R. 21, ¶ 9 (2008). We have considered the appellant's sworn statement that he did not receive the February 10, 2016 letter, but we find that this statement is still insufficient in light of the other considerations identified by the administrative judge. The record shows that the letter was delivered to the appellant's street address on February 12, 2016, and left at the front door.[2] IAF, Tab 8 at 81-82. Furthermore, in neither of his responses to the notices of proposed removal did the appellant deny receiving the letter, even though his receipt of the letter was clearly at issue both times. IAF, Tab 7 at 25-26, 39, Tab 8 at 66-67, 73; *see Reynolds v. Department of Justice*, 63 M.S.P.R. 189, 195 (1994) (finding the appellant's allegations less credible when he raised them for the first time during his Board appeal); *Abatecola v. Veterans Administration*, 29 M.S.P.R. 601, 607 n.3 (same), *aff'd*, 802 F.2d 471 (Fed. Cir. 1986) (Table). Also, during the second oral response, the appellant's representative affirmatively stated that the appellant had received the letter, and the appellant said nothing to correct or contradict his representative's statement. IAF, Tab 7 at 26. For these reasons, and in light of all the evidence on the issue, including the appellant's sworn declaration, we find it more likely than not that the appellant received the agency's letter on February 12, 2016, when it was delivered to his home.

¶12 The agency charged the appellant with being absent from work in a leave status for a total of 2,741.25 hours during various specified periods from July 7, 2015, through February 3, 2017. IAF, Tab 7 at 37-38. For the reasons explained above, because the appellant was not warned of the possibility of discipline for

---

[2] The delivery notice does not indicate that the letter was delivered to a specific unit of the building. ID at 23. However, there is insufficient evidence about the nature of the building for the Board to judge how likely this would have been to result in nonreceipt.

approved leave until February 12, 2016, the leave that he took on or before that date cannot be used to support the charge. Therefore, we do not sustain the specifications concerning 264 hours of leave from July 7 through August 27, 2015; 584 hours of leave from September 7 through December 15, 2015; and 344 hours of leave from December 16, 2015, through February 12, 2016. IAF, Tab 7 at 37, Tab 8 at 29-33. Still, the remaining specifications concern an alleged 1,549.25 hours of leave taken over about 1 year from February 13, 2016, through February 3, 2017. The administrative judge found preponderant evidence to prove that the appellant was on LWOP for at least that many hours during that period. ID at 14-19. We agree, for the most part;[3] however, for the following reasons, we find that only 1,109.25 hours of leave taken from February 13, 2016, through February 3, 2017, are appropriately considered towards the excessive absences charge.[4]

¶13    The appellant argues that some of these absences were covered under the FMLA and therefore cannot be used to support his removal. PFR File, Tab 1 at 8-11; *see McCauley v. Department of the Interior*, 116 M.S.P.R. 484, ¶ 11 (2011) (holding that FMLA-covered leave cannot be used to support an excessive absences charge). The record contains the following evidence on the issue. On

---

[3] The administrative judge observed that the timesheets that the agency submitted reflected a greater amount of LWOP for certain periods than did the notice of proposed removal. She found that the agency proved LWOP as reflected in the timesheets. ID at 15 & nn.10-11. However, the timesheets show the appellant in an LWOP status on several Federal holidays, IAF, Tab 8 at 33, 41, 44, 54, 57-58, and this appears to be the reason for the discrepancy. In any event, regardless of what the timesheets indicate, we decline to consider any absences that were not included in the charge. *See Fitzgerald v. Department of the Army*, 61 M.S.P.R. 426, 428-29 (1994) ("[T]he Board will not sustain an action on the basis of charges that the agency could have brought but did not.").

[4] The administrative judge relied, in part, on the parties' stipulations in finding that the appellant was on LWOP on the days and times alleged. ID at 14-17. On review, the appellant argues, correctly, that some of the stipulations upon which the administrative judge relied had been withdrawn. PFR File, Tab 1 at 4-6; IAF, Tab 45 at 3-8, Tab 50 at 5-6. We have therefore reevaluated the agency's evidence without regard to the withdrawn stipulations. We find that the timesheets themselves are sufficient to support the agency's allegations. IAF, Tab 8 at 33-59.

November 10, 2016, the appellant requested leave for the period beginning November 4, 2016. IAF, Tab 47 at 45-46. The appellant's supervisor informed him that the leave would be covered under the FMLA and requested that the appellant provide an end date. *Id.* at 45. The appellant responded that he wished to take leave until January 24, 2017, and he provided a health professional's note to support the request. *Id.* at 44-45.

¶14    The administrative judge acknowledged that the supervisor's email at least implied that the appellant's leave would be covered under the FMLA. ID at 18-19. However, she found that the appellant was ineligible for FMLA protection because he had not worked at least 1,250 hours in the preceding 12 months. ID at 19. This analysis is incorrect because, like most non-Postal Service Federal employees, the appellant was covered under FMLA Title II, which does not contain the 1,250-hour eligibility requirement. *See* 5 C.F.R. § 630.1201(b); *compare* 29 U.S.C. § 2611(2) (eligibility requirements for Title I employees), *with* 5 U.S.C. § 6381(1) (eligibility requirements for Title II employees). Furthermore, even if the appellant were for some other reason not entitled to FMLA-covered leave for this period, we would still decline to include it in the calculation; by assuring the appellant that his leave would be FMLA-covered, the appellant's supervisor was effectively promising him that he could not be disciplined for taking it. Therefore, none of the leave charged to the appellant between November 4, 2016, and January 24, 2017, will be considered towards sustaining the excessive absences charge.[5]

¶15    The agency did not charge the appellant with any leave taken from November 4 to 13, 2016. IAF, Tab 7 at 38. But it did charge him with leave from November 14, 2016, through January 24, 2017. *Id.* Although the appellant's timesheets show that he was carried in a LWOP status for 416 hours during that period, we will not consider these hours towards sustaining the excessive

---

[5] This is a period of slightly less than 12 weeks, but it is all that the appellant's request encompassed.

absences charge. IAF, Tab 8 at 54-59. Further, although the appellant was carried in an LWOP status on three Federal holidays (February 15, May 30, and July 4, 2016) during the remaining period of fairly charged excessive absences, we will exclude those 24 LWOP hours from our consideration. *Id.* at 33, 36, 44. Therefore, we find that the agency's charge is supported by 1,109.25 hours of approved LWOP (1,549.25 – 416 – 24 = 1,109.25) that the appellant took between February 13, 2016, and February 3, 2017. Although these absences are less extensive than the total number of absences with which the appellant was charged, we nevertheless find that they continued beyond a reasonable time.[6] *See Gartner v. Department of the Army*, 104 M.S.P.R. 463, ¶ 10-11 (2007) (sustaining an excessive absences charge based on 333.5 hours of absence during a 6-month period).

¶16 Regarding the final requirement of the *Cook* exception, we agree with the administrative judge that the appellant's position needed to be filled by an employee available for duty on a regular basis. ID at 24-25. The appellant argues that the agency had 51 other Patent Examiner vacancies that it was unable to fill. PFR File, Tab 1 at 12-13. However, we agree with the administrative judge that the existence of these vacancies is immaterial and does not mean that the agency did not need to fill the appellant's position. This is particularly so considering evidence that the agency had a backlog of cases and was attempting to hire hundreds of new Patent Examiners to handle them. ID at 24-25. We therefore find that all of the *Cook* criteria are satisfied, and we sustain the charge.

¶17 The appellant raised several affirmative defenses, including claims of discrimination based on race, age, national origin, and disability (under a

---

[6] The appellant alleges that an agency regulation requires employees to obtain prior approval from their director before taking LWOP in excess of 5 days and that his supervisor approved extended LWOP without the director's permission. He argues that the charge cannot be sustained because the LWOP was not approved by the correct official. PFR File, Tab 1 at 6; IAF, Tab 57 at 5. Even assuming that such a regulation exists, the appellant's argument would require the Board to add a fourth condition to the *Cook* exception, i.e., that the leave was approved according to correct procedures. We decline to do so.

reasonable accommodation theory), retaliation for EEO activity, and whistleblower retaliation.[7] For the reasons explained in the initial decision, we agree with the administrative judge that the appellant did not prove these claims.[8] ID at 27-36.

¶18 The appellant does not otherwise challenge the administrative judge's finding that the penalty of removal was within the tolerable limits of reasonableness, and we affirm that finding on review. ID at 36-39. Although we have not sustained certain specifications of the excessive absences charge, we find that the analysis of the reasonableness of the penalty is not materially affected. As we have explained above, the agency established that the appellant was absent from work for 1,109.25 hours, or about 138 days, in a 1-year period, which is a substantial amount of absence. We have considered the appellant's arguments on review and the record in this matter, and we find that the penalty of removal is reasonable given the proven specifications of the excessive absences charge and the relevant penalty factors. *E.g.*, *Byers v. U.S. Postal Service*, 78 M.S.P.R. 456, 463-64 (1998) (holding that, when all of an agency's charges are sustained, but not all of the underlying specifications, the agency's selected penalty is entitled to due deference and should be reviewed to determine its reasonableness for the sustained specifications).

---

[7] Regarding the appellant's claim of retaliation for EEO activity, to the extent that this activity was protected under the Rehabilitation Act, the appellant would need to prove that retaliation was a but-for cause of his removal. *Pridgen*, 2022 MSPB 31, ¶¶ 45-46. The administrative judge's finding that the appellant failed to prove motivating factor causation necessarily means that he failed to prove but-for causation. *See Desjardin v. U.S. Postal Service*, 2023 MSPB 6, ¶ 33.

[8] The appellant argues, among other things, that the administrative judge should have granted his motion to compel discovery of information pertaining to a potential comparator. PFR File, Tab 1 at 15. However, the appellant has not explained what information he was denied or how it would have changed the outcome of the appeal. In any event, because the agency provided most of the requested information and indicated that the remainder was not in its possession, we find that the administrative judge did not abuse her discretion in denying the motion. IAF, Tabs 35, 43.

ORDER

¶19    This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113 (5 C.F.R. § 1201.113).

NOTICE OF APPEAL RIGHTS[9]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b) (9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board
Washington, D.C.