**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JASON M. WILLIAMS SR.,<br>　　　　　Appellant, | DOCKET NUMBER<br>DC-0752-18-0620-I-1 |
| 　　　v. | |
| DEPARTMENT OF HOMELAND<br>　SECURITY,<br>　　　　　Agency. | DATE: October 24, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Neil Curtis Bonney</u>, Esquire, Virginia Beach, Virginia, for the
　appellant.

<u>Edith L. Moore McGee</u>, Esquire, <u>Lorna Jacqueline Jerome</u>, Esquire,
　Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

**REMAND ORDER**

¶1　　　The appellant has filed a petition for review of the initial decision, which sustained the appellant's removal for failure to maintain a regular work schedule. For the reasons discussed below, we GRANT the appellant's petition for review.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

We REVERSE IN PART and AFFIRM IN PART the initial decision. The appellant's removal is NOT SUSTAINED. We REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2 The following facts are undisputed. The appellant was employed by the agency as a Supervisory Accounting Technician. Initial Appeal File (IAF), Tab 10 at 49. Beginning in March 2017, the appellant began taking significant amounts of leave due to his symptoms from Meniere's disease. IAF, Tab 5 at 13-38, Tab 6 at 4-10, 25. In October 2017, the appellant submitted to the agency a letter from his physician explaining the appellant's condition and recommending accommodations, including morning telework due to side effects of medication, through February 2018. IAF, Tab 6 at 25. The agency granted the appellant's reasonable accommodation request. *Id.* at 23. Nonetheless, the appellant continued to take frequent leave. IAF, Tab 5 at 35-38, Tab 6 at 4-10.

¶3 On January 23, 2018, the agency warned the appellant that he needed to return to duty on a regular full-time basis and that he could be removed if his attendance did not improve. IAF, Tab 16 at 34. During that meeting, the appellant informed his supervisor that he had a "30-day plan" to return to a regular work schedule. *Id.* Two days later, the appellant emailed his supervisor with details of this 30-day plan, indicating that he would return to a regular work schedule the week of February 19, 2018, and that he would no longer need to work under a reasonable accommodation.[2] *Id.* at 18.

¶4 The appellant returned to a regular work schedule on February 19, 2018. IAF, Tab 16 at 11. Shortly thereafter, however, he began to suffer from gastrointestinal issues, which resulted in a visit to the emergency room on April 17, 2018. IAF, Tab 16 at 51-53. Between the appellant's February 19,

---

[2] On March 14, 2018, the appellant's physician wrote a letter confirming that the appellant was cleared to perform his essential duties without a reasonable accommodation plan. IAF, Tab 6 at 12.

2018 return to a regular schedule and April 24, 2018, the appellant worked 48.5 hours out of an available 240 hours. IAF, Tab 5 at 8, Tab 6 at 9-10, Tab 16 at 41-42.

¶5    As a result, on April 24, 2018, the agency proposed the appellant's removal for failure to maintain a regular work schedule. IAF, Tab 5 at 6-9. Specifically, it alleged that the appellant's attendance record between March 19, 2017, and March 25, 2018, reflected that he was absent for 653.5 hours out of an available 2,080 work hours.[3] *Id.* at 6. The proposal notice stated that "removal is the only effective course of action for the efficiency of the service, since [the appellant] is unable to maintain a regular work schedule due to situations beyond [his] control." *Id.* at 8. In his written reply to the proposal notice, the appellant explained that, following a medical appointment on April 26, 2018, his symptoms related to his gastrointestinal issues were corrected and resolved, and that, in the period between his proposed removal and reply, he had been consistently performing his duties as a supervisory accounting technician. IAF, Tab 4 at 24-25.

¶6    On June 7, 2018, the deciding official issued a decision on the notice of proposed removal. IAF, Tab 4 at 16-21. In addition to discussing the relevant *Douglas*[4] factors, he considered the appellant's argument that, following the issuance of the notice of proposed removal, his medical conditions improved and his attendance returned to normal, but ultimately found that sequence of events "concerning," stating that he doubted "the authenticity of the reason given" for

---

[3] Of the 653.5 hours, the appellant had taken 122 hours of annual leave, 218.5 hours of leave without pay, and 313 hours from the voluntary leave transfer program. IAF, Tab 5 at 6. The proposal notice specifically stated that the 653.5 hours did not include absences for medical conditions covered by his approved Family Medical Leave Act (FMLA) requests. *Id.*; see *McCauley v. Department of the Interior*, 116 M.S.P.R. 484, ¶¶ 10-11 (2011) (explaining that an agency may not rely on FMLA-protected leave when charging an employee with excessive absences).

[4] In *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), the Board articulated a nonexhaustive list of factors relevant to the penalty determination in adverse actions.

the appellant's return. *Id.* at 17-18. As such, he found that removal was the "most appropriate penalty and is taken for the efficiency of the service." *Id.* at 18. The appellant's removal was effective June 8, 2018. *Id.*

¶7 The appellant appealed his removal to the Board arguing that the removal did not promote the efficiency of the service, that the deciding official failed to consider mitigating factors, and that the agency discriminated against him based on his disability. IAF, Tab 1 at 6, Tab 17 at 4.

¶8 After a hearing, the administrative judge issued an initial decision. IAF, Tab 20, Initial Decision (ID). She found that the agency established the required elements to prove its charge of failure to maintain a regular schedule by preponderant evidence. ID at 3-13. Regarding the appellant's affirmative defense, she found that the appellant failed to show that his conditions limited any major life activity, and that he, therefore, failed to establish his disability discrimination claim. ID at 13-15. She then concluded that the agency proved that there was a nexus between the appellant's removal and the efficiency of the service, and that the penalty of removal was reasonable. ID at 16-20.

¶9 The appellant has filed a petition for review of the initial decision. Petition for Review (PFR) File, Tab 1. He reiterates his arguments from below that his situation presented significant mitigating circumstances in that his absences were due to medical problems, that the removal action does not promote the efficiency of the service, that the deciding official did not properly consider the *Douglas* factors, and that he was discriminated against due to a disability. *Id.* at 6-11. The agency did not respond to the appellant's petition for review.

**ANALYSIS**

The agency proved its charge.

¶10 The agency charged the appellant with failure to maintain a regular schedule, noting that, between March 19, 2017, and March 25, 2018, he was absent for 653.5 hours out of an available 2080 work hours. IAF, Tab 5 at 6. The

administrative judge appropriately construed that charge as one of excessive absences. ID at 6; *see Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 31 (2014) (construing a charge of inability to work a regular schedule as a charge of excessive absences). Generally, an agency may not take an adverse action based on an employee's use of approved leave. *Williams v. Department of Commerce*, 2024 MSPB 8, ¶ 5. However, as appropriately explained by the administrative judge, an exception exists when an agency can prove that (1) the employee was absent for compelling reasons beyond his control so that agency approval or disapproval was immaterial because the employee could not be on the job; (2) the absences continued beyond a reasonable time, and the agency warned the employee that an adverse action could be taken unless the employee became available for duty on a regular full-time or part-time basis; and (3) the agency showed that the position needed to be filled by an employee available for duty on a regular, full-time or part-time basis. *Id.*, ¶ 5; *Fox*, 120 M.S.P.R. 529, ¶ 31; *Cook v. Department of the Army*, 18 M.S.P.R. 610, 611-12 (1984).

¶11 Regarding the first criterion, the administrative judge acknowledged that the parties stipulated that the appellant suffered from Meniere's disease and that he was absent for reasons beyond his control. ID at 10; IAF, Tab 18 at 2. Regarding the second criterion, the administrative judge explained that 653.5 hours of non-Family and Medical Leave Act (FMLA)-protected leave was the equivalent of 81 days of leave and that such an amount of time was longer than reasonable. ID at 10. She further credited the appellant's supervisor's testimony that she met with the appellant on January 23, 2028, along with a human resources representative, to discuss the impact of his absences and to warn him that the agency intended to issue a "Notice of Intent" to terminate his employment based on his inability to maintain a work schedule. ID at 12; IAF, Tab 6 at 18, Tab 16 at 34, Tab 19, Hearing Compact Disc, Tab 19-1 (testimony of the appellant's supervisor). Regarding the criterion concerning whether the agency showed that the position needed to be filled by an employee on a regular basis, the

administrative judge relied on the appellant's supervisor's testimony that the appellant's absences impacted the team's operations, particularly because the appellant was a supervisor, so another employee had to review his subordinates' work. ID at 9; IAF, Tab 19-1 (testimony of the appellant's supervisor). After a thorough discussion of the evidence in support of the agency's charge, the administrative judge found that the agency proved the charge of failure to maintain a regular schedule by preponderant evidence. ID at 6-13.

¶12    The appellant has not challenged this finding on review. *See* 5 C.F.R. § 1201.115 (explaining that the Board normally will consider only issues raised in a timely filed petition or cross petition for review). Ultimately, we discern no basis to disturb it. We note, however, that in *Williams*, the Board found that, to prove a charge of excessive approved absences, an agency cannot rely on absences that predate its warning to the appellant regarding his attendance. 2024 MSPB 8, ¶ 6. Here, the agency warned the appellant that his absences were excessive and that it intended to remove him on January 23, 2018. IAF, Tab 6 at 18, Tab 16 at 34. Thus, only absences after January 23, 2018, can be relied upon in support of the removal action. In any event, the proposal notice explains that, between February 19, 2018, and the date of the notice, the appellant only worked 48.5 hours of 240 hours. IAF, Tab 5 at 8, Tab 6 at 9-10, Tab 16 at 41-42. Further, the deciding official stated that, following the appellant's return to a regular schedule in February 2018, he began taking sporadic leave again just 1 week later and continued to do so until early March, when he remained absent and in a leave without pay (LWOP) status. IAF, Tab 4 at 17. Accordingly, we find that the agency still meets its burden of showing that the appellant's absences continued beyond a reasonable time even relying only on absences postdating the January 23, 2018 warning. *See Williams*, 2024 MSPB 8, ¶¶ 5-6.

¶13    Based on our review of the record, we find that the administrative judge's analysis of the charge with respect to the other two factors is sound, and we discern no basis to disturb her findings. *See Crosby v. U.S. Postal Service*,

74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

The agency did not prove nexus between the charge and the efficiency of the service.

¶14    In addition to proving the charge, the agency must also establish the existence of a nexus between the sustained misconduct and the efficiency of the service and that the penalty of removal is reasonable. 5 U.S.C. § 7513(a); *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 18 (2013); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306-07 (1981). Regarding nexus, the requirement to show that an adverse action promotes the efficiency of the service means that there must be a clear and direct relationship between the articulated grounds for an adverse action and either the employee's ability to accomplish his or her duties satisfactorily or some other legitimate Government interest. *Merritt v. Department of Justice*, 6 M.S.P.R. 595, 596 (1981), *modified on other grounds by Kruger v. Department of Justice*, 32 M.S.P.R. 71, 75 n.2 (1987). It is well settled that the "efficiency of the service" standard of 5 U.S.C. § 7513(a) is the "ultimate criterion" for determining both whether any discipline is warranted and whether a particular penalty may be sustained. *Owens v. Department of Homeland Security*, 2023 MSPB 7, ¶ 15; *Wren v. Department of the Army*, 121 M.S.P.R. 28, ¶ 7 (2014); *Morgan v. U.S. Postal Service*, 48 M.S.P.R. 607, 611 (1991).

¶15    In the initial decision, the administrative judge found that the agency established the nexus requirement based on the burden placed on an agency when faced with the appellant's unscheduled absences, but she did not address the appellant's recovery following the proposal notice. ID at 16. On review, the appellant maintains his position that his removal does not promote the efficiency of the service because his medical issues were resolved when the agency effected

his removal and the agency otherwise stipulated that he was "not a disciplinary problem." PFR File, Tab 1 at 7-9; IAF, Tab 18 at 2. As discussed below, we agree with the appellant and find that his removal for a failure to maintain a regular work schedule, which was caused by medical conditions out of his control that were resolved at the time of his removal, does not promote the efficiency of the service.

¶16 The charge at issue here—inability to maintain a regular work schedule— bears similarities to a removal for a physical inability to perform. Both types of cases generally involve serious long-term health conditions resulting in lengthy absences attendant to those conditions. Additionally, both types of cases concern an agency's need to replace an employee who, through no fault of his own, is no longer able to provide useful and efficient service. When an appellant who has been removed for physical inability to perform presents evidence of complete recovery from the medical condition that resulted in his removal before the administrative judge has issued an initial decision in his appeal, the removal action does not promote the efficiency of the service. *See Owens*, 2023 MSPB 7, ¶ 15; *Johnson v. U.S. Postal Service*, 120 M.S.P.R. 87, ¶ 8 (2013); *Morgan*, 48 M.S.P.R. at 611-12; *Street v. Department of the Army*, 23 M.S.P.R. 335, 340-43 (1984). Similarly, we find that it does not promote the efficiency of the service to remove an employee for excessive absence when he has fully recovered from the medical condition(s) that caused those absences and resumed regular attendance before his removal has even been effected.

¶17 Here, along with his reply to the notice of proposed removal, the appellant submitted to the agency a March 14, 2018 letter from his physician explaining that he no longer experiences physical symptoms related to Meniere's disease because it has been appropriately treated and that his medical conditions "should not impact his life activities on or off the job." IAF, Tab 6 at 12. The appellant also stated during his reply that his gastrointestinal issues had "resolved and have been corrected" following medical intervention around the time the agency issued

the proposal notice, and the record contains April 23, 2018 medical evidence supporting this assertion. IAF, Tab 4 at 24-25, Tab 16 at 61-62. Thus, we find that the appellant has shown that he was fully recovered from his medical conditions prior to the June 7, 2018 agency decision.

¶18 Further, although the Board has held that removal for a charge of excessive absences promotes the efficiency of the service when there is "no foreseeable end" to the absences, *see, e.g.*, *Williams*, 2024 MSPB 8, ¶¶ 2, 18; *Allen v. Department of the Army*, 76 M.S.P.R. 564, 570-71 (1997); *Conte v. Department of the Treasury*, 10 M.S.P.R. 346, 348 (1982), the appellant's medical evidence following his recovery all indicated that he could perform the essential duties of his position, that his medical conditions no longer affected his life activities on or off the job, and that he could return to a normal work schedule. IAF, Tab 6 at 12, Tab 16 at 62. Most importantly, it is undisputed that, upon resolution of the appellant's medical issues, his attendance returned to normal. IAF, Tab 4 at 17, 24-25. In the final decision removing the appellant, the deciding official dismissed the appellant's resumption of regular attendance and ignored the medical evidence showing that the appellant's medical problems had been resolved or otherwise brought under control. IAF, Tab 4 at 16-18.

¶19 Because the evidence plainly demonstrates that the appellant's irregular schedule due to his medical conditions returned to normal following the resolution of those medical conditions, and there is no indication that the appellant would relapse, we find that the agency failed to prove that his removal promotes the efficiency of the service. *See Owens*, 2023 MSPB 7, ¶ 15; *Johnson*, 120 M.S.P.R. 87, ¶ 8; *Morgan*, 48 M.S.P.R. at 611-12; *Street*, 23 M.S.P.R. at 340-43. Therefore, we reverse the administrative judge's finding to the contrary and, accordingly, reverse the removal action.[5]

---

[5] Because we reverse the agency's action based on its failure to prove the removal promotes the efficiency of the service, we need not address the penalty.

<u>The appeal is remanded for further adjudication of the appellant's disability discrimination claim.</u>

¶20 Regarding the appellant's disability discrimination defense, the Board adjudicates claims of disability discrimination raised in connection with an otherwise appealable action under the substantive standards of section 501 of the Rehabilitation Act. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 35. The Rehabilitation Act has incorporated the standards of the Americans with Disabilities Act (ADA), as amended. *Id.* Therefore, we apply those standards here to determine if there has been a Rehabilitation Act violation. *Id.* In particular, the ADA provides that it is illegal for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a); *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28. An employer is also required to provide reasonable accommodation to an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5); *Haas*, 2022 MSPB 36, ¶ 28. Thus, both a claim of disability discrimination based on an individual's status as disabled and a claim based on an agency's failure to reasonably accommodate that disability require that the individual be disabled within the meaning of 42 U.S.C. § 12102(1) and 29 C.F.R. § 1630.2(g)(1) and that he be "qualified," meaning that he can perform the essential functions of the position that he holds with or without reasonable accommodation. *Haas*, 2022 MSPB 36, ¶ 28.

¶21 In her initial decision, the administrative judge found that the appellant failed to prove his disparate treatment disability discrimination claim because he failed to prove that he was disabled within the meaning of the statute. ID at 14. We disagree. To prove that he has a disability, the appellant must show that he: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g)(1). An impairment is considered a disability if it substantially limits an individual's

ability to perform a major life activity as compared to most people in the general population. 29 C.F.R. § 1630.2(j)(1)(ii). Major life activities include, but are not limited to, caring for oneself, performing manual tasks, eating, lifting, bending, concentrating, communicating, and working; major life activities also include the operation of major bodily functions. 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(i)(1). The term "substantially limits" is construed broadly in favor of expansive coverage, to the maximum extent permitted under the ADA, and is not meant to be a demanding standard. 29 C.F.R. § 1630.2(j)(1)(i).

¶22        The administrative judge found that the appellant did not establish that he was an individual with a disability because his diagnosis of Meniere's disease was not sufficient, by itself, to prove that he was disabled and he failed to otherwise show that he was limited in any major life activity. ID at 14. However, the parties have stipulated that the appellant's numerous absences from work were due to his medical condition, and the record contains an October 10, 2017 note from the appellant's physician explaining that the appellant's symptoms often rendered him unable to commute to work. IAF, Tab 6 at 25, Tab 18 at 2. It also contains a January 25, 2018 email from the appellant to his supervisor explaining that his symptoms are exacerbated by a lack of oxygen, which interferes with his ability to sleep well, so much so that he underwent a sleep study. IAF, Tab 6 at 18. Thus, we find that the appellant was "substantially limited" in his ability to work and sleep. His subsequent improvement and ability to manage his symptoms do not change this conclusion, as Meniere's disease is a permanent condition. *See* 29 C.F.R. § 1630.2(j)(vi) (stating that the "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures"). Accordingly, we find that the record supports a finding that the appellant's Meniere's disease rendered him disabled within the meaning of 42 U.S.C. § 12102(2) and 29 C.F.R. § 1630.2(j)(1)(ii).

¶23    We also find that, at the time the deciding official issued the decision removing the appellant, he was a "qualified" individual who could perform the essential functions of his position with or without reasonable accommodation. *See Haas*, 2022 MSPB 36, ¶ 28. Notably, in the time immediately preceding the removal decision, the appellant's absences were minimal, and there is no other evidence showing that he was unable to perform the essential functions of his job. Indeed, the record includes a March 14, 2018 letter from the appellant's physician explaining that the appellant was "cleared to perform his essential duties without a need of a reasonable accommodations plan" and that he is "on medications that are tolerated well and should not adversely affect his ability to perform the essential functions" of his position. IAF, Tab 6 at 12. Regarding his gastrointestinal issues, the appellant also submitted evidence that this condition improved and that he was cleared to return to duty as normal. IAF, Tab 16 at 61-62. Accordingly, we find that the appellant has met the threshold requirement of showing that he was a qualified individual with a disability. *See Haas*, 2022 MSPB 36, ¶ 28.

¶24    Because she found that the appellant did not meet the definition of "disabled" for purposes of the Rehabilitation Act, the administrative judge did not analyze the remainder of the appellant's disparate treatment claim, i.e., whether disability discrimination was at least a motivating factor in the appellant's removal. *See Pridgen*, 2022 MSPB 31, ¶ 40. In light of this, and in light of the agency's failure to establish a nexus between its charge and the efficiency of the service, we find it appropriate to remand the appeal for further adjudication, limited to the disability discrimination issue. On remand, the administrative judge shall permit the parties to submit supplemental briefing on the matter.

## ORDER

¶25    Accordingly, the initial decision is REVERSED IN PART, and the case is REMANDED for further adjudication.

¶26 Notwithstanding the remand proceedings on the appellant's disability discrimination claim, we ORDER the agency to cancel the appellant's removal and restore him retroactive to June 8, 2019. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must accomplish this action no later than 20 days after the date of this decision.

¶27 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶28 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶29 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶30 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

FOR THE BOARD:

_Gina K. Grippando_

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.

**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐   1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐   2) Settlement agreement, administrative determination, arbitrator award, or order.

☐   3) Signed and completed "Employee Statement Relative to Back Pay".

☐   4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐   5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐   6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐   7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).

**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion. Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.