# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| SHANTELLA BARGE,<br>　　　　　Appellant, | DOCKET NUMBER<br>SF-0752-17-0668-I-1 |
|　　　v. | |
| DEPARTMENT OF DEFENSE,<br>　　　　　Agency. | DATE: March 20, 2026 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Shantella Barge</u>, Carlsbad, California, pro se.

<u>Rachael House</u>, Carson, California, for the agency.

### BEFORE

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which sustained her removal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to apply the correct legal standard to the agency's charge, supplement the initial decision's analysis regarding the appellant's claim of disability discrimination, and find that the agency proved the requisite nexus and reasonableness of its penalty, we AFFIRM the initial decision.

## BACKGROUND

The following facts, as further detailed in the initial decision, are undisputed unless otherwise noted. The appellant assumed the position of Procurement Technician with the agency in July 2015. Initial Appeal File (IAF), Tab 19, Initial Decision (ID) at 3. In October 2015, her team relocated to a new office, which was within a Northrop Grumman facility. ID at 3-4. Based on seniority, the appellant was fourth to choose from the cubicles in this new office, at which point the only two cubicles with a window had already been selected. ID at 4.

In November 2015, the appellant submitted a request for reasonable accommodation, along with a physician's note. *Id.*; IAF, Tab 7 at 32, Tab 8 at 22. The accommodations the appellant requested were (1) to be seated in front of a window, (2) to be seated with her back against a wall, and (3) to telework twice a week. IAF, Tab 7 at 32. Soon thereafter, the appellant and her supervisor further discussed the requests, although there is some dispute about the extent of their engagement and interactions. *E.g.*, ID at 4-7; IAF, Tab 15 at 7. In January 2016,

the appellant submitted additional medical documentation regarding her reasonable accommodation request. IAF, Tab 8 at 23-26. Again, there is some dispute about the extent of their engagement and offers for alternative accommodation, but it is undisputed that the agency never provided the appellant with the specific accommodations she had requested. *E.g.*, ID at 6-9; IAF, Tab 7 at 36-37, Tab 14 at 61.

On August 23, 2016, the appellant invoked the Family and Medical Leave Act (FMLA). On November 17, 2016, the appellant's first-line supervisor issued her a memorandum requesting medical documentation and completed leave requests for the period from August 29 to November 29, 2016. IAF, Tab 7 at 50. On February 9, 2017, the appellant's first-line supervisor issued the appellant a "Return to Duty" letter. *Id.* at 61. The letter informed the appellant that, assuming she was entitled to FMLA leave for the period beginning August 23, 2016, her FMLA entitlement ended on November 22, 2016. Absent a request from the appellant, the leave from August 23, 2016, to November 30, 2016, would be coded as leave without pay (LWOP). The appellant was ordered to return to duty on February 13, 2017, and maintain a consistent, regular, full-time work schedule. The appellant was informed that if she did not return to duty, the appellant's first-line supervisor would "have no alternative than to initiate administrative action that could include [her] removal from the Federal service." *Id.* at 62.

On May 8, 2017, the agency proposed the appellant's removal based on a single charge of excessive absence. IAF, Tab 8 at 7-8. The charge alleged that from November 23, 2016, to May 8, 2017, the appellant had been granted 907.5 hours of leave without pay. *Id.* The deciding official sustained the proposed action, and the appellant's removal was effective July 28, 2017. *Id.* at 41-46. The appellant appealed the agency's action, raising affirmative defenses of disability discrimination (reasonable accommodation), retaliation for

requesting accommodation in an equal employment opportunity (EEO) complaint, and harmful procedural error.  IAF, Tabs 1, 17.

The administrative judge held the requested hearing before sustaining the appellant's removal.  She found that the agency proved its charge, ID at 14-18, while the appellant did not prove her affirmative defenses, ID at 18-29.  Most notably, this included the appellant's claim of a failure to accommodate.  ID at 22-27.

The appellant has filed a petition for review and supplement to the same.  Petition for Review (PFR) File, Tabs 4-5.[2]  She asserts that the agency did not prove its charge and that the administrative judge erred in finding no merit to her disability discrimination claim.[3]  PFR File, Tab 4 at 3.

<u>The agency proved its charge of excessive absence.</u>

First, we must revisit the analysis of the charge given the Board's recent decision in *Williams v. Department of Commerce*, 2024 MSPB 8.  Generally, an agency may not take an adverse action based on an employee's use of approved leave.  *Combs v. Social Security Administration*, 91 M.S.P.R. 148, ¶ 12 (2002).  However, an exception exists when the following criteria are met:  (1) the

---

[2] Additionally, the appellant submitted a request for an extension of time to file a further supplement to her petition.  PFR File, Tab 6.  The Clerk of the Board denied the request.  PFR File, Tab 7.  The Clerk provided, however, that to the extent that the appellant has additional materials that she wishes the Board to consider, she may file a motion for leave to submit an additional pleading.  The appellant did not file such a motion.

[3] The appellant's supplement to her petition consists of evidence, without argument.  Some of that evidence is included in the record below, so its submission on review is inconsequential.  *Compare* PFR File, Tab 5 at 4-17, *with* IAF, Tab 14 at 64-77.  However, it appears that the appellant has submitted the remaining evidence for the first time on review, despite the evidence being dated prior to the initial decision.  PFR File, Tab 5 at 18-32.  Because the appellant has not shown that this is new and material evidence that was previously unavailable, we will not consider the evidence.  *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 213-14 (1980) (under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the record closed before the administrative judge despite the party's due diligence).

employee was absent for compelling reasons beyond her control so that agency approval or disapproval of leave was immaterial because she could not be on the job; (2) the absences continued beyond a reasonable time, and the agency warned the employee that an adverse action could be taken unless she became available for duty on a regular, full-time or part-time basis; and (3) the agency showed that the position needed to be filled by an employee available for duty on a regular, full-time or part-time basis. *Cook v. Department of the Army*, 18 M.S.P.R. 610, 611-12 (1984). This exception applies only under unusual circumstances, such as when the employee is unable to return to duty because of the continuing effects of illness or injury. *Id.* In *Williams*, which was issued after the initial decision in this case, the Board held that absences that predate the warning required under *Cook* cannot be used to support an excessive absence charge. *Williams*, 2024 MSPB 8, ¶¶ 6-8.

Here, in charging the appellant with excessive absence, the agency relied on leave that was taken prior to its February 9, 2017 Return to Duty letter. The charge alleged that from November 23, 2016, to May 8, 2017, the appellant had been granted 907.5 hours of LWOP. IAF, Tab 8 at 7. However, because the agency did not warn the appellant until February 9, 2017, the agency may not support the charge citing leave the appellant took prior to being informed of the possibility of discipline for approved leave. We thus review whether the charge may be sustained based on leave taken after the appellant was warned and modify the initial decision accordingly. After February 9, 2017, the appellant remained on LWOP until at least May 8, 2017, approximately 3 months, or 480 hours. None of this time consisted of FMLA leave. Notwithstanding the shorter period of time properly encompassed within the charge, we find that this amount of leave is excessive. *See, e.g.*, *Gartner v. Department of the Army*, 104 M.S.P.R. 463, ¶ 8 (2007) (finding 252.75 hours of LWOP to be excessive).

The appellant did not meet her burden of proving disability discrimination.

We next revisit the appellant's disability discrimination claim to explain our agreement with the administrative judge, because this is a point of contention in the appellant's petition for review. We modify the initial decision to supplement the administrative judge's analysis.

An agency is required to reasonably accommodate known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. 29 C.F.R. § 1630.9(a). Reasonable accommodation includes modifications to the manner in which a position is customarily performed in order to enable a qualified individual with a disability to perform the essential job functions. *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 9 (2013). To establish disability discrimination, an employee must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a qualified individual with a disability pursuant to 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide a reasonable accommodation. *Id.*

Although an individual with a disability may request a modification to the work environment or adjustments in how and when a job is performed, due to a medical condition, this request does not necessarily mean that the employer is required to provide the requested accommodation or adjustment. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 15 (2014). A request for reasonable accommodation is the first step in an informal, interactive process between the individual and the employer. *Id.* "The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. part 1630, appendix, § 1630.9.

When the disability and/or the need for accommodation is not obvious, the employer may ask the individual for reasonable documentation about her

disability and functional limitations. *White*, 120 M.S.P.R. 405, ¶ 12. In such circumstances, if the employee fails to respond to the employer's reasonable request for medical information or documentation, an agency will not be found to have violated its duty to provide a reasonable accommodation. *Id.* Additionally, if more than one accommodation will enable an individual to perform the essential functions of her position, the preference of the individual with the disability should be given primary consideration, but the employer providing the accommodation has the ultimate discretion to choose between effective accommodations. *Miller*, 121 M.S.P.R. 189, ¶ 21. An employee is entitled to reasonable accommodation, but not necessarily the accommodation of her choice. *Id.*; *Henry v. Department of Veterans Affairs*, 108 M.S.P.R. 458, ¶ 22 (2008).

The administrative judge assumed, without finding, that the appellant is an individual with a disability, i.e., posttraumatic stress disorder (PTSD). ID at 23. She also found that the appellant was a qualified individual with a disability. ID at 24. However, regarding the final prong of her burden, the administrative judge found that the appellant did not make any request for reasonable accommodation relative to the period of her absence from duty. ID at 25. She further found that even if the appellant's requests for leave could be construed as a request for accommodation, the appellant did not meet her obligation to participate in the interactive process. ID at 25-26. Lastly, the administrative judge found that even if the appellant's earlier requests for accommodations in the form of seating by a window, seating with her back against a wall, and 2 days of telework were outstanding during the period at issue, the appellant similarly did not meet her obligation to engage in the interactive process. ID at 26-27. The appellant has not presented any substantive argument to persuade us otherwise on any of these points. PFR File, Tab 4 at 3. Nevertheless, we take this opportunity to address the accommodation requests that the appellant did explicitly make.

The appellant first requested her seating and telework accommodations in November 2015. IAF, Tab 7 at 32. The letter she provided from her physician

indicated that, due to hypervigilance from PTSD, the appellant needed "a desk where her back is protected by walls and she is able to see who is coming into her work space." IAF, Tab 8 at 22. The physician's letter also indicated that "[t]his condition responds well to natural light and nature," so the appellant "requires a desk facing a window." *Id.* Lastly, the letter "recommend[ed]" telework 2 days a week to reduce the amount of time spent in traffic. *Id.* This letter provided no other information of note regarding the nature of the appellant's condition or associated needs.

Just days after the appellant's request for accommodation, her first-level supervisor emailed the appellant, indicating that they had spoken about the issue and that the appellant should submit an attached form pertaining to the appellant's release of information to the Federal Occupational Health (FOH) physician. IAF, Tab 15 at 7. The appellant did not do so, but the FOH physician nevertheless analyzed the appellant's request for accommodation in December 2015. ID at 5; IAF, Tab 7 at 34. He indicated that exposure to natural light and seating with the back to the wall are "fairly standard" with PTSD and "probably reasonable." IAF, Tab 7 at 34. However, he indicated that the medical documentation did not establish the need for a cubicle against a window, as opposed to a cubicle near a window that receives natural light. *Id.* The FOH physician further suggested that the medical documentation was limited and there was nothing to indicate that the request for telework was a necessary accommodation, so more clinical information was needed to make a firm recommendation pertaining to telework. *Id.*

Following the FOH physician's input, the appellant's first-level supervisor issued a January 2016 decision, which indicated that the request for reasonable accommodation was being denied in its entirety because "the information provided [was] not sufficient to reach an informed decision." *Id.* at 36. Nevertheless, the decision went on to explain that the first-level supervisor was working with Northrop Grumman to see if the appellant's cubicle could be

reconfigured and to see if a more suitable location was available in another building. *Id.* The decision also informed the appellant of cubicles that were already available and that the appellant was welcome to them. *Id.* Lastly, the decision indicated that if the appellant preferred to change her start and end times to minimize the stress from traffic, she should let the first-level supervisor know. *Id.*

The appellant appealed the reasonable accommodation decision of her first-level supervisor to her second-level supervisor, summarily indicating that the cubicles offered did not meet her needs and rejecting the offer to change her tour of duty to lessen the stress from traffic.[4] *Id.* at 39. The appellant also indicated that she did not believe she was required to sign the FOH release. *Id.* She did, however, attach more medical documentation from a different physician, dated January 2016. IAF, Tab 8 at 23-26. This physician indicated that she had begun treating the appellant for PTSD in May 2014, and she surmised that the condition commenced years earlier. *Id.* at 24. She described the appellant's PTSD as causing "intermittent episodes of hypervigilance and anxiety," such that the appellant would benefit from a workspace that limited her perceived anxiety. *Id.* Specifically, the physician requested that the appellant be given "a desk with a wall to her back in an open space with increased natural lighting." *Id.* She also indicated that cubicles with tall walls increased the appellant's anxiety. *Id.* Lastly, the physician expressed her agreement with the earlier suggestion for 2 days of telework each week, indicating that it would reduce the appellant's stress from commuting in a car. *Id.* at 26. The physician did not provide any additional information of note. She did not, for example, explain whether those specific accommodations were required over other potential alternatives. Armed with this new documentation, the appellant's second-level supervisor remanded

---

[4] The appellant's appeal is dated January 3, 2016, but it references the January 13, 2016 denial letter. IAF, Tab 7 at 39. Thus, it seems as if the January 3 date is a typographical error. We nevertheless assume that the appellant sent the letter soon after the January 13 denial.

the matter to the appellant's first-level supervisor to consider in the first instance. ID at 7.

In March 2016, a second FOH physician reviewed the first FOH physician's opinion and the appellant's latest medical documentation before concluding that the medical documentation was confusing and insufficient to support any change from the earlier FOH opinion. IAF, Tab 7 at 41-42. Thereafter, in April 2016, the appellant's first-level supervisor once again issued a decision indicating that she was denying the request for accommodations because "the information provided [was] not sufficient to reach an informed decision." IAF, Tab 14 at 61. Once more though, the decision went on to indicate that the appellant's first-level supervisor remained open to discuss "alternative solutions such as moving [the appellant] to a different, open cubicle, changing [her] tour of duty start and end times, changing the number of hours [she] work[ed] each day to assist in avoiding time spent in traffic, etc." *Id.* The decision informed the appellant that she could request reconsideration with her second-level supervisor, as she had before, but there is no evidence that the appellant did so. *Id.*; ID at 8-9. In fact, we find no indication that the appellant further pursued her request for accommodation in any way between the agency's April 2016 decision letter and her extensive absence, which began in August 2016.

As mentioned previously, the parties disagree about the amount of other interaction and engagement that occurred in conjunction with the appellant's November 2015 and January 2016 requests for accommodation. The appellant's first-level supervisor provided extensive testimony, describing various reasons why the appellant's specific requests were not immediately provided, as well as her efforts concerning the same and requests for additional information from the appellant. For example, the appellant's first-level supervisor explained she could easily put the appellant in a cubicle *near* a window, where she had natural light, but the only two cubicles with their own window were occupied by other

employees, so she did not want to displace those employees without first receiving medical documentation clarifying whether cubicles near a window would suffice. *E.g.*, IAF, Tab 18-3 at 20:25, Tab 18-4 at 6:00 (testimony of the appellant's first-level supervisor). She also explained that she consulted Northrop Grumman officials responsible for the facility, where she learned that there were some structural limitations pertaining to the appellant's request to be seated with her back against a wall and necessitating further discussions between those officials and the appellant about feasible options that would best meet the appellant's needs. *E.g.*, IAF, Tabs 18-3 at 47:00, 18-4 at 6:30 (testimony of the appellant's first-level supervisor). For example, the first-level supervisor testified that the Northrop Grumman officials determined that they could not reconfigure the appellant's seat in a way that she would be seated with her back completely against a wall, but it could reposition her to mostly meet those needs and change the height of her cubicle walls. *E.g.*, IAF, Tab 18-4 at 7:50 (testimony of the appellant's first-level supervisor). Yet, according to the appellant's first-level supervisor, the appellant rebuffed those efforts, refusing to meet for the purpose of discussing options. *E.g.*, *id.* at 7:30, 10:45, 11:45, 44:00. In contrast, when the appellant testified, she asserted that her first-level supervisor would not discuss the reasonable accommodation request at all. IAF, Tab 18-8 at 4:30 (testimony of the appellant).

The administrative judge implicitly found the appellant's first-level supervisor more credible than the appellant. She concluded that the appellant refused to entertain accommodation alternatives and generally hamstrung the agency's efforts by failing to provide adequate medical information. We agree.

To recall, the appellant requested (1) to be seated in front of a window, (2) to be seated with her back against a wall, and (3) to telework twice a week. However, while the medical documentation she provided could reasonably be construed as indicating that natural light from a nearby window would suffice, the appellant rejected offers of a cubicle near a window and insisted on a cubicle with

a window of her own. The medical documentation also requested that the appellant be afforded a seat in which her back was against a wall, but the appellant refused to consult with the Northrop Grumman officials who controlled the facility and wanted to discuss associated options that were structurally feasible. Finally, while the medical documentation recommended 2 days a week of telework to limit the stress of commuting in traffic, the FOH physicians found the medical documentation lacking and the appellant refused the agency's alternative offer of modified work hours to lessen the traffic and resulting stress.

All the while, the appellant rebuffed the agency's efforts to get further information from her medical providers—efforts that we find reasonable and permissible under the circumstances. Given the nature of the appellant's condition and the limited documentation she provided to the agency, the agency was understandably and reasonably seeking clarification about the appellant's needs, including whether alternative accommodations would suffice. Yet, the record before us suggests that the appellant submitted her initial request for accommodation in November 2015, with one brief doctor's note, and she appealed her first-level supervisor's initial denial in January 2016, with another brief doctor's note, but she did not take any other good faith steps to reciprocate the agency's efforts to further engage in the interactive process. Instead, the appellant hindered those efforts, providing no additional medical documentation or access. We therefore find that the appellant has not met her burden of proving disability discrimination. *See, e.g.*, *Rosario-Fabregas v. Department of the Army*, 122 M.S.P.R. 468, ¶ 18 (2015) (finding that an agency did not act improperly by denying an employee's requests when the employee did not respond to the agency's request for clarification and otherwise refused to engage in the interactive process), *aff'd*, 833 F.3d 1342 (Fed. Cir. 2016); *Miller*, 121 M.S.P.R. 189, ¶¶ 16-19 (finding that an employee did not establish disability discrimination because she did not engage in the interactive process in good faith; she rejected the agency's offers at each step); *Simpson v. U.S. Postal Service*,

113 M.S.P.R. 346, ¶¶ 17-18 (2010) (finding that the appellant did not prove the denial of reasonable accommodation when he was unresponsive to the agency's good faith attempts to engage in the interactive process).

The agency established the requisite nexus and reasonableness of its penalty.

The administrative judge found that the agency proved its charge and that the appellant did not prove any of her affirmative defenses. Yet she did not explicitly address the nexus requirement or reasonableness of the agency's penalty. We therefore modify the initial decision to find these elements met.

In addition to proving its charge, an agency's burden in an appeal such as this includes establishing a nexus between the charge and the efficiency of the service and demonstrating that the penalty imposed was reasonable. *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997). The nexus requirement is clearly met in this case of excessive absences. *See Cole v. Department of Veterans Affairs*, 77 M.S.P.R. 434, 441 (1998) (finding the nexus requirement met for an absence-related charge). We also find the agency's penalty to be reasonable. When, as here, the agency's charge is sustained, the Board will review the agency-imposed penalty to determine if the agency considered all of the relevant factors and exercised management discretion within the tolerable limits of reasonableness. *Singletary v. Department of the Air Force*, 94 M.S.P.R. 553, ¶ 9 (2003), *aff'd*, 104 F. App'x 155 (Fed. Cir. 2004). In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). Here, the record before us suggests that the deciding official thoughtfully considered the *Douglas* factors. IAF, Tab 8 at 32-35, 41-42. Plus, the Board has found lesser absences supportive of removal. *E.g.*, *Gartner*, 104 M.S.P.R. 463, ¶¶ 8, 15 (finding removal to be reasonable for excessive absences totaling 333 hours).

To conclude, we modify the initial decision to apply the correct legal standard to the agency's charge, while still finding it proven. We supplement the

administrative judge's conclusion that the appellant did not establish her affirmative defenses. Finally, we modify the initial decision to find that the agency proved the requisite nexus and reasonableness of its penalty. The appellant's removal is therefore sustained.

## NOTICE OF APPEAL RIGHTS[5]

The initial decision, as supplemented by this Final Order, constitutes the Boards final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:     *Gina K. Grippando*
                           _____
                           Gina K. Grippando
                           Clerk of the Board

Washington, D.C.